UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ARTHUR E. SCHLICHTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:16-cv-61-WTL-TAB |
| | ) |
| BERT BELL/PETE ROZELLE NFL | ) |
| PLAYERS RETIREMENT PLAN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT

The Plaintiff brings this action against the Defendant under the Employee Retirement Income Security Act ("ERISA"), alleging that the Defendant erred by deciding that he was not entitled to receive a service credit for 1983. This cause is before the Court on the parties' cross–motions for summary judgment (Dkt. Nos. 12 & 14). Both motions are fully briefed, and the Court, being duly advised, now **DENIES** the Plaintiff's motion (Dkt. No. 14) and **GRANTS** the Defendant's motion (Dkt. No. 12) for the reasons set forth below.

### I. STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). When the Court reviews cross-motions for

summary judgment, as is the case here, "we construe all inferences in favor of the party against whom the motion under consideration is made." *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008) (quotation omitted). "'[W]e look to the burden of proof that each party would bear on an issue of trial.'" *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)). However, a party who bears the burden of proof on a particular issue may not rest on its pleadings, but must show what evidence it has that there is a genuine issue of material fact that requires trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. FACTUAL BACKGROUND[1]

### A. The Plan and Material Plan Terms

The Bert Bell/Pete Rozelle NFL Player Retirement Plan (the "Plan") is the product of collective bargaining between the National Football League ("NFL") Players Association and the NFL Management Council and is subject to the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act ("LMRA"). ERISA is the "comprehensive and reticulated statute" governing employee benefit plans. The LMRA complements ERISA and allows a "multiemployer plan" to be jointly administered by an equal number of employee and employer representatives, which in this case is the Plan's Retirement Board.

---

[1] The Plaintiff has indicated that he "agrees with" (Dkt. No. 14 at 4 n.1) the Defendant's Statement of Material Facts Not in Dispute; accordingly, the Court has adopted with only minor edits the Statement of Material Facts Not in Dispute as set forth in the Defendant's brief.

The Retirement Board is the named fiduciary and administrator of the Plan; it is composed of an equal number of NFL Management Council representatives and NFL Players Association representatives; and it has broad authority to interpret the Plan and determine claims for benefits. The Plan expressly grants the Retirement Board "full and absolute discretion, authority and power to interpret, control, implement, and manage the Plan," including the power to "[d]efine the terms of the Plan…, construe the Plan…, and reconcile any inconsistencies therein." Dkt. No. 13-1 at 49.

Three Plan provisions are material to this case. The first is Section 1.35, which defines the "Players" who participate in the Plan: "'Player' means any person who is or was employed under a contract by an Employer to play football in the League." Dkt. No. 13-1 at 13. The second is Section 1.11(a), which defines "Credited Season": "'Credited Season' means a Plan Year in which a Player . . . is an Active Player (including an injured Player who otherwise satisfies the definition of "Active Player") on the date of three or more Games." Dkt. No. 13-1 at 9. The third is Section 1.1, which defines "Active Player": "'Active Player' means a Player who is obligated to perform football playing services under a contract with an Employer." Dkt. No. 13-1 at 8.

### B. Schlichter's Application and the Retirement Board's Decision

Schlichter played for the Indianapolis/Baltimore Colts during the 1982, 1984, and 1985 seasons. Schlichter did not play a single game in 1983 because the NFL Commissioner suspended him for that entire year for violating the NFL's rules against gambling. Plan records therefore show that Schlichter was an Active Player in, and earned service credit ("Credited Seasons") for, the years 1982, 1984, and 1985.

On April 27, 2015, Schlichter filed an application seeking Credited Seasons for 1983 and 1986. Schlichter argued that he should get a Credited Season for 1983 because, "[d]espite the

3

fact that the NFL suspended him, [his] contract still obligated him to play for the Colts during the 1983 season," and that same contract prevented him from playing in the Canadian football league or the United States Football League. Dkt. No. 13-2 at 27. Schlichter said he should get a Credited Season for 1986 because he "played in a number of pre-season games for the Buffalo Bills and was on the active roster in 1986 until he was cut." *Id.*

On May 14, 2015, the six voting members of the Retirement Board—three NFL Management Council representatives and three former players—unanimously denied Schlichter's application. The Retirement Board concluded that Schlichter was not entitled to a Credited Season because he was not an Active Player in 1983 or 1986. The letter explaining the Retirement Board's decision notified Schlichter of his right to seek further administrative review.

On August 4, 2015, Schlichter appealed the Retirement Board's initial decision. On appeal, Schlichter again argued that he is entitled to a Credited Season for 1983 because, despite never actually playing football that year due to his season-long suspension, he was "obligated" to play football by virtue of his contract with the Colts.

On August 19, 2015, the Retirement Board denied Schlichter's appeal, explaining as follows:

> [T]he Retirement Board determined that, contrary to your arguments, Mr. Schlichter was not obligated to perform football playing services during the period of his suspension in 1983. Instead, Mr. Schlichter was completely precluded from performing such services by virtue of his suspension, and he was not paid under his 1983 contract. Because Mr. Schlichter was precluded from performing football playing services in 1983 (and, furthermore, was not in any way compensated for football playing services), the Retirement Board determined that he was not an Active Player during that season as defined by Plan section 1.1, and therefore he does not satisfy the Credited Season provision at section 1.11(a).

Dkt. No. 13-2 at 75.

### III.  DISCUSSION

The Plaintiff filed this action pursuant to the applicable provision of ERISA, 29 U.S.C. § 1132, seeking the Court's review of the Retirement Board's interpretation and application of the Plan. Judicial review of an ERISA administrator's benefits determination is *de novo* unless the benefits plan grants the administrator discretionary authority in determining eligibility for benefits or in construing the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When the administrator has such discretionary authority, as the parties here agree the Plan allows, the Court applies a deferential arbitrary–and–capricious standard when reviewing the administrator's decision. *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 860-61 (7th Cir. 2009); *see also Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) (discussing deferential review standard's use in such instances).

For ERISA purposes, "the arbitrary-and-capricious standard . . . is synonymous with abuse of discretion." *Raybourne v. Cigna Life Ins. Co. of New York*, 576 F.3d 444, 449 (7th Cir. 2009). The abuse of discretion standard of review is deferential, but it "is not a euphemism for a rubber-stamp." *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 483 (7th Cir. 2009). Under this standard, the Court "must ensure only that a plan administrator's decision has rational support in the record." *Edwards v. Briggs & Stratton Retirement Plan*, 639 F.3d 355, 360 (7th Cir. 2011) (internal quotation omitted); *see also Raybourne*, 576 F.3d at 449. A plan administrator's decision is arbitrary and capricious if it "ignores, without explanation, substantial evidence that the claimant has submitted that addresses what the plan itself has defined as the ultimate issue." *Majeski*, 590 F.3d at 484. Moreover, it is "not [the Court's] function to decide whether [it] would reach the same conclusion as the Plan or even rely on the same authority." *Tegtmeier v. Midwest Operating Engineers Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004) (quotation and

citation omitted). Instead, "[i]f the administrator made an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, then that decision is final." *Id.* (citation omitted).

The crux of the issue is the definition of an "Active Player." The Plaintiff asserts that the Retirement Board's interpretation of the Plan controverted the plain meaning of the Plan. Specifically, the Plaintiff points to the Plan's definition of an Active Player as "a Player who is obligated to perform football playing services under a contract" with an NFL team, *see* Dkt. No. 13-1 at 8, and argues that the Plaintiff's contract with the Colts obligated him to perform football playing services for the 1983 NFL season. He argues that the Retirement Board impermissibly added the prerequisite of eligibility to award of a Credited Season, contrary to the plain language of the Plan.

The Defendant argues that the Plaintiff was the opposite of an Active Player in 1983, as, although under contract, he was obligated not to perform football playing services because of his year-long suspension by the NFL. Schlichter's contract contained the following language:

> RULES. Player will comply with and be bound by all reasonable Club rules and regulations in effect during the term of this contract which are not inconsistent with the provisions of this contract or of any collective bargaining agreement in existence during the term of this contract. Player's attention is also called to the fact that the League functions with certain rules and procedures expressive of its operation as a joint venture among its member clubs and that these rules and practices may affect Player's relationship to the League and its member clubs independently of the provisions of this contract.

Dkt. No. 13-2 at 56. As such, the language of the contract itself recognized that the NFL had the power to supersede the terms of the contract and the Plaintiff's relationship with the Colts.

The Defendant also points to the Plan's distinction between Players (who participate in the Plan) and Active Players (who may earn credited seasons). Both are under contract, but an Active Player is also "obligated to perform football playing services." The Retirement Board's

6

decision provides meaning to the "obligated to perform football playing services" requirement. The Board found that a player who was completely precluded by the NFL from performing football services was not "obligated to perform football playing services" for purposes of the Plan.

The Court cannot find that this interpretation of the Plan by the Board is arbitrary and capricious, as the Retirement Board's decision is a reasonable interpretation of the plain language of the Plan, even though it is not the only possible such reasonable interpretation. *See Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005) ("We will not set aside a denial of benefits based on any reasonable interpretation of the plan."). The Plaintiff relies heavily on a 1977 Maryland case that he argues stands for the proposition that "a party to a contract is not relieved of his obligations under that contract merely due to the fact that his own actions have rendered satisfaction of those obligations impossible." Dkt. No. 14 at 6. In that case, the court found as follows:

> Under the circumstances presented here, we agree with Mrs. Stone that the doctrine of temporary impossibility is inapplicable. The transactions provided for by the contract are the payment of a sum of money and the purchase of a certain land tract in lieu of periodic alimony. By their nature, they are still capable of being performed. Mrs. Stone remains ready, willing and able to convey her joint interest in the 17 acre tract. The tract exists in the same condition as it did at the time of contracting. There has been no subsequent legislative enactment banning or regulating cash transactions of the sort involved here which would render impossible the performance of Mr. Stone's obligation to make a payment of money. Therefore, the subject matter of the agreement is not incapable of being performed. The subsequent events referred to by the trial court do not render performance objectively impossible, as contemplated by the principle of impossibility of performance.

*Stone v. Stone*, 368 A.2d 496, 500 (Md. Ct. Spec. App. 1977).

Here, however, the NFL's suspension of the Plaintiff is the type of regulatory act that made it impossible for the Plaintiff to perform the services required of him under his contract

with the Colts. As such, there is support in the record for the Retirement Board's decision. Nor has the Plaintiff pointed to substantial evidence that he claims has been ignored by the Retirement Board. Accordingly, the Retirement Board did not abuse its discretion.

## IV. CONCLUSION

For the reasons detailed in this entry, the Court **DENIES** the Plaintiff's Motion for Summary Judgment and **GRANTS** the Defendant's Motion for Summary Judgment.

**SO ORDERED: 3/15/17**

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana


Copies to all counsel of record via electronic communication